## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

IN RE:

CASE NO.  18-05107 (ESL)

**DISTRIBUIDORA LEQUAR, INC.**

CHAPTER 11

Debtor

**PLAN OF REORGANIZATION**

**CHARLES A. CUPRILL P.S.C.**
**LAW OFFICES**
**Attorney for Debtor**
**356 Fortaleza Street**
**Second Floor**
**San Juan, PR  00901**
**Tel.:  787-977-0515**
**Fax:   787-977-0518**
**E-mail: ccuprill@cuprill.com**

Distribuidora Lequar, Inc., Debtor and Debtor-in-possession in the above captioned case ("Debtor") hereby proposes the following Plan of Reorganization (the "Plan") under Section 1121 of Title 11 of the United States Code.

## ARTICLE I

### DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I. A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation:

      (a)    fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code, and

      (b)    all fees and charges assessed against Debtor pursuant to 28 U.S.C. §1930.

"Allowed" shall mean, with reference to any Claim:

      (a)    a Claim that has been listed by the Debtor in its Schedules, as amended, and (i) is

Distribuidora Lequar, Inc.
**Plan of Reorganization**                                                                                              **Page 3**

not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)      a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order;

(c)      a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)      any Claim Expressly Allowed under the Plan or pursuant to the Confirmation Order.

"Bankruptcy Case" shall mean the Debtor's Chapter 11 case pending in the Bankruptcy Court.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Puerto Rico where the Bankruptcy Case is pending.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075, and any local rules of the Bankruptcy Court.

"Bar Dates" shall mean January 10, 2019 and March 4, 2019, as to Debtor's Bankruptcy Case, respectively fixed as the last dates for the filing of proof of claims by creditors asserting Claims against the Debtor, other than governmental units, and by governmental units, as stated in the "Notices of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" dated September 4, 2018 issued by the Clerk of the Bankruptcy Court, or otherwise be forever barred from

asserting a Claim against Debtor or its property and from voting on the Plan and/or sharing in distributions under the Plan.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Puerto Rico.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, and money orders).

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Objection Bar Date" shall mean the later of the date that such claims become due and payable in accordance with their terms, or thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of Debtor's Plan.

If an objection has not been filed to a Claim by the Claims Objection Bar Date, the Claim will be treated as an Allowed Claim.

"Claims Objection" means the objections to claims that have been or may be filed against the Holders (or purported Holders) of Claims.

"Class" shall mean those classes designated in Article III of the Plan.

Distribuidora Lequar, Inc.
Plan of Reorganization                                                                Page 5

"Collateral" shall mean (a) any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court, but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"Debtor" shall mean Distribuidora Lequar, Inc.

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits, and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

(a)     if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)     if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection,

Distribuidora Lequar, Inc.
Plan of Reorganization                                                      Page 6

request for estimation, action to limit recovery or dispute has not been withdrawn or determined

by Final Order; or

      (c)    a Claim which is a Contingent or Unliquidated Claim.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a

Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect

of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

"Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 hereof.

"Distribution Record Date" shall mean the Business Day preceding the Effective Date.

"Effective Date" shall mean the date which is sixty (60) days after the Confirmation Date, or if

such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as

of such date, all conditions precedent to the occurrence of the Effective Date set forth in Article

X of the Plan have not been satisfied or waived pursuant to Section 10.2 of the Plan, then the

first Business Day immediately following the day upon which all such conditions have been

satisfied or waived and the sale of the Assets has been consummated.

"Equity Holders" shall mean Mr. and Mrs. Rafael Bejar Bejar, the sole holders of the Equity

Interests in Debtor.

"Equity Interest" shall mean the interest of any holder of Debtor's common equity securities and

all options, warrants and rights, contractual or otherwise, to acquire any such equity securities in

Debtor, as such interests exist immediately prior to the Effective Date.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or

amended and, as to which (i) the time to appeal or seek review or rehearing has expired and no

appeal or petition for *certiorari*, review or rehearing is pending, or (ii) if an appeal, review,

reargument or *certiorari* of the order has been sought, the order has been affirmed or the request

Distribuidora Lequar, Inc.
Plan of Reorganization                                                                        Page 7

for review, reargument or *certiorari* has been denied and the time to seek a further appeal,
review, reargument or *certiorari* has expired, and as a result of which such order shall have
become final and non-appealable in accordance with applicable law; provided, however, that the
possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or
any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not
cause such order not to be a Final Order.

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled
to priority of payment under Section 507 of the Bankruptcy Code.

"Holder" shall mean a Person or Entity who holds a Claim or Interest.

"Initial Distribution Date" shall mean the date at least thirty (30) days after the Effective Date, or
the next succeeding Business Day if such thirtieth day is not a Business Day when funds are
available for distribution.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code, except that a
lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549, or 553 of
the Bankruptcy Code shall not constitute a Lien.

"Order of Relief" shall mean the date of the entry of the order of relief.

"Organizational Documents" shall mean the corporate bylaws, certificate of incorporation,
together with all of Debtor's other corporate documents necessary to effectuate the provisions of
the Plan.

"Oriental" shall mean Oriental Bank.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-
stock company, trust, unincorporated association or organization, governmental agency or
political subdivision thereof.

Distribuidora Lequar, Inc.
Plan of Reorganization                                                                    Page 8

"Petition Date" shall mean September 1st, 2018, the date on which Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court, pursuant to the Bankruptcy Code.

"Plan" shall mean this Plan under Chapter 11 of the Bankruptcy Code, including, without limitation, the Plan Documents, if any, and all exhibits, supplements, appendices and schedules hereto and thereto, either in their present form or as the same may be altered, amended or modified from time to time.

"Plan Documents" shall mean and include such agreements, instruments, documents as may be required to effectuate the terms of the Plan.

"Priority Claims" shall mean any and all Claims (or portions thereof), entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

"Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Professionals" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

Distribuidora Lequar, Inc.
Plan of Reorganization                                                    Page 9

"Secured Claim" shall mean any Claim that is secured by Collateral, to the extent of the value of

such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in

the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the

extent of the amount of such setoff.

"Via Monti" shall mean Debtor's affiliate Via Monti, Inc.

## ARTICLE II

## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

**2.1** **Non-Classification**.   In accordance to Section 1123(a)(1) of the Bankruptcy Code,

Administrative Expense Claims and Priority Claims are not classified for the purposes of voting

on or receiving distributions under the Plan.  All such Claims are instead treated separately in

accordance with the terms set forth in this Article II.

**2.2** **Administrative Expense Claims.**

(a)    General.  Except as otherwise agreed to by Debtor and the holder of a pending Allowed

Administrative Expense Claim, each such holder shall be paid in full during the ordinary course

of business, with any pending balance to be paid from the carve out separated for these creditors.

If Debtor disputes any portion of an Administrative Expense Claim, Debtor shall pay

such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance

of such disputed Administrative Expense Claim. Debtor will reserve the necessary funds to meet

these payments.

(b)    U.S. Trustee's Fees.  The United States Trustee's quarterly fees shall be paid in full when

due pursuant to 11 U.S.C. § 1930.

(c)    Professionals Compensation and Expense Reimbursement Claims.

Distribuidora Lequar, Inc.
Plan of Reorganization                                                                    Page 10

The professionals retained by Debtor in Debtor's Chapter 11 case have and will incur fees and expenses from the date of their retention through the Effective Date of the Plan. It is impossible to predict the amount of professional administrative expense fees that will be incurred through the confirmation of the Plan.

Debtor estimates that Pending Allowed Professionals Fee Claims will amount to $45,000 to $65,000 for services rendered and expenses incurred up to the Confirmation of the Plan for all professionals retained by Debtor. All amounts paid to professionals through the Confirmation Date, including interim fees and expenses are subject to final Bankruptcy Court approval. Debtor reserves the right to contest the allowance of any Professional Fees. Payments to Professionals will be made as approved by the Bankruptcy Court during the pendency of the Chapter 11 Case and/or from the proceeds of the sale of Debtor's assets.

**2.3** **Priority Tax Claims.** Priority Tax Claims consist of the Claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

Debtor's Plan considers the sale and/or orderly liquidation of its inventories and other assets through public sales coordinated by Caribbean Asset Recovery ("CAR"). Based on CAR's estimates and analysis, the net recovery from such sales is estimated between $350,000 to $375,000. From this net amount, Debtor will segregate various carve-outs for all Classes of creditors in the case.

Holders of Allowed Priority Tax Claims, secured and unsecured, other than CRIM's allowed claim, will be paid in full by Debtor on the Effective Date from a $95,000 carve-out reserved for these claims. (See Exhibit D of the Disclosure Statement)

CRIM's allowed priority unsecured claims shall be paid 50% of their balance on the

Distribuidora Lequar, Inc.
Plan of Reorganization                                                                        Page 11

Effective Date, from the aforesaid carveout.

Holders of Other Allowed Priority Claims, primarily consisting of unpaid vacations owed to Debtor's ex-employees, will be paid in full by Debtor on the Effective Date from a $6,000 carve out reserved for these claimants.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

As of the Petition Date, Debtor had partially Secured Claims and General Unsecured Claims, as more particularly described below:

Class 1 -  Consists of the Claims of Oriental Bank ("Oriental"),  partially secured by Debtor's Affiliate's, Via Monti, Inc. ("Via Monti"), Real Properties, Debtor's inventories and other personal property.

Class 2 - Consists of the Unsecured Claim of Oriental, arising from Debtor's guarantees of Via Monti's loan.

Class 3 - Consists of Holders of Allowed General Unsecured Claims.

Class 4 -  Consists of the Holders of Debtor's Equity Interests.

## ARTICLE IV
## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTEREST

**Class 1 –Oriental Bank's ("Oriental") Partially Secured Claims**

(a)    Impairment and Voting - Class 1 is impaired under the Plan.  Oriental will be entitled to vote to accept or reject the Plan.

(b)    Distribution – Oriental's claims consisting of a long-term loan partially secured by Debtor's Affiliate's, Via Monti, real properties at: (i) Dr. Veve Street, Bayamón, Puerto Rico ("Property No. 1") with an estimated value of $300,000; (ii) Urb. Industrial Ext. El Comandante, Carolina, Puerto Rico with an estimated value of $600,000 ("Property No. 2"); and (iii) Calle

Gautier Benitez, Caguas, Puerto Rico with an estimated value of $200,000 ("Property No. 3"), and a line of credit partially secured by UCC filings over Debtor's inventories and other personal property shall be paid as follows on the Effective Date:

a. Via Monti will transfer to Oriental Properties No. 1, 2 and 3 with their combined estimated value of $1,100,000, to be credited to the principal of Oriental's claims against Debtor;

b. Debtor will consent to the application by Oriental to its claims against Debtor of the certificate of deposit held by Oriental in the amount of $125,000, to be credited to the principal of Oriental claims;

c. A cash payment of $125,000, from the proceeds of the sale of Debtor's inventories.

Additionally, any excess of funds after the carve outs established for other Classes will be paid to Oriental.

The remaining balance of Oriental's claims (the deficiency claim) will be dealt with as a General Unsecured Claim under Class 3 below, entitled to vote but not receiving dividends under such Class.

**Class 2 – Oriental's Unsecured Claim**

(a) <u>Impairment and Voting</u> - Class 2 is unimpaired under the Plan. Oriental will be entitled to vote to accept or reject the Plan under this Class.

(b) <u>Distribution</u> – Oriental's Unsecured Claim, arising from Debtor's guarantee of Via Monti, loan, shall continue to be paid by Via Monti, not requiring cash payments under the Plan.

**Class 3 -- Holders of Allowed General Unsecured Claims**

**Distribuidora Lequar, Inc.**
**Plan of Reorganization**                                                          Page 13

    (a)    <u>Impairment and Voting</u> - Class 3 is impaired under the Plan.  The members of this Class 3 consist of Holders of General Unsecured Claims filed against Debtor, entitled to vote under the Plan.

    (b)    <u>Distribution</u> – Holders of Allowed General Unsecured Claims, excluding Oriental's deficiency claim, are entitled to vote but will not receive dividends under this Class, and will be paid in full satisfaction of their claims 2% thereof on the Effective Date from a $50,000 carve out reserved for this Class.

**Class 4 – Holders of Debtor's Equity Interest**

    (a)    <u>Impairment and Voting</u> - Class 4 is unimpaired under the Plan.  Members of this Class, Mr. and Mrs. Rafael Bejar, are unimpaired under the Plan and not entitled to vote to accept or reject the Plan.

    (b)    <u>Distribution</u> – The Equity Holders will not receive any distribution under the Plan, but will retain their shares in Debtor unaltered.

**ARTICLE V**

**MEANS FOR EXECUTION OF THE PLAN**

Debtor's Plan considers the sale of all of its inventories and miscellaneous assets through an orderly liquidation by CAR.  The proceeds from such sales are estimated between $350,000 to $375,000.  From these funds, specific carveouts for each Class will be reserved and distributed as follows:

| Creditors/Classes | Claims  Balance | Dividend % | Cash Payments At the Effective Date |
|---|---|---|---|
| Oriental Bank - Class 1 | $ 4,166,064 | 3% | $ 125,000 |

Distribuidora Lequar, Inc.
**Plan of Reorganization**                                                                                    **Page 14**

| | | | |
|---|---|---|---|
| Oriental Bank - Class 2 | 2,305,639 | 0% | - |
| Administrative Expense Claims | 99,122 | 100% | 99,122 |
| Allowed Priority Tax Claims | 177,825 | 53% | 93,884 |
| Other Priorities | 5,688 | 100% | 5,688 |
| Allowed General Unsecured Claims - Class 3 | 2,769,317 | 1.8% | 50,000 |
| **Equity Holders – Class 4** | - | 0 | - |
| **Total** | $ 9,523,655 | | $    373,694 |

As set forth above the above distributions will be made from the proceeds of the sale of Debtor's inventories and miscellaneous assets and any cash balance in Debtor's DIP accounts. In the event that there is an excess of funds, the same will be paid to Oriental.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.1     <u>**Method of Distributions under the Plan.**</u>

(a)     <u>In General</u>.  Subject to Bankruptcy Rule 9010, all distributions under the Plan to the Holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the address of each Holder as listed on the Master Address List of the Bankruptcy Case, as the same may have been amended, as of the Distribution Record Date, unless Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of a Claim filed by a Holder of an Allowed Claim that provides an address for such Holder different from the address reflected on the Master Address List.

Debtor shall have no obligation to locate such Holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned.

Distribuidora Lequar, Inc.
Plan of Reorganization                                                                 Page 15

(b)    Distribution to be on Business Day.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(c)    Fractional Dollars.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of less than $0.50, and rounding up in the case of more than $0.50).

(d)    Distribution to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those Holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

6.2    **Objections to Disputed Claims**.  Any objections to Claims against Debtor shall be prosecuted by the Debtor, including any application to estimate or disallow Claims for voting purposes.

6.3    **Deadlines for Objecting to Disputed Claims.**  Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, Debtor may file an objection to such Claim or otherwise dispute such Claim until the later of (i) the date that such Claim becomes due and payable in accordance with its terms, or (ii) thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan.

6.4    **Estimation of Claims.**  Debtor, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the

Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning the Claim or an objection thereto. Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation in reference thereof. If the Bankruptcy Court determines the maximum limitation of such Claim, the determination shall not preclude Debtor from pursuing any additional proceedings to object to any ultimate payment of the Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan. All those proceedings are cumulative and not exclusive remedies.

**6.5     Disputed Claims Reserve.**

(a)     Establishment. Debtor shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of the respective Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or for such lesser amount as required by a Final Order.

(b)     Investment of Cash. Cash in the respective Disputed Claims Reserve may be invested by Debtor only in Cash Equivalents having maturities sufficient to enable Debtor to make all necessary payments to holders of Disputed Claims, in accordance to this Plan, if and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions, or accretions on account of such investment in Cash Equivalents shall be for Debtor's benefit and account, and the payment of any income taxes or other taxes arising therefrom shall be solely the responsibility of Debtor.

(c)     Distribution upon Allowance of Disputed Claims. The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive

Distribuidora Lequar, Inc.
Plan of Reorganization                                                                          Page 17

distributions of Cash from the Disputed Claims Reserve as soon as practical following the date
on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such
distributions shall be made in accordance with the Plan based upon the distributions that would
have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim
on or prior to the Initial Distribution Date.  No holder of a Disputed Claim shall have any claim
against the Disputed Claims Reserve, with respect to such Claim until the Disputed Claim shall
become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on
the Disputed Claim.

6.6   **Reversion of Unclaimed Checks and Disputed Claims Reserve.**   The following
amounts shall revert and be vested in the Debtor, as to the claims to be paid under the Plan, free
and clear of any claim or interest of any Holder of that Claim under the Plan: (i) the amount of
any checks issued for distributions under the Plan that remain uncashed for a period of 90 days
after the date of the distributions, and (ii) to the extent that a Disputed Claim is not Allowed or
becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the
amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to the Disputed
Claim, over the amount of Cash actually distributed on account of such Disputed Claim.

6.7   **Good Standing**:  To the extent Debtor is not in compliance as of the Effective Date with
any state or local law requirements necessary to remain a corporation in good standing and/or
remain authorized as a corporation to conduct business in any jurisdiction, Debtor, shall be
deemed to be in compliance with any such laws if it complies therewith within six (6) months
after the Effective Date.

## ARTICLE VII
## VOTING ON THE PLAN

**7.1**   **Voting of Claims**.   Each holder of an Allowed Claim in an impaired Class which receives payments under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**7.2**   **Nonconsensual Confirmation**.   If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided for in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, Debtor reserve the right (i) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 12.3 hereof to the extent necessary to obtain the entry of a Confirmation Order.

**ARTICLE VIII**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND POST-PETITION CONTRACTS**

**8.1**   **Rejection of Executory Contracts and Unexpired Leases**.   All executory contracts and unexpired leases which have not expired by their own terms or have been rejected on or prior to the Confirmation Date shall be deemed rejected on the Effective Date and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

If the rejection of such executory contracts or unexpired leases results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its properties, its agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before forty-five (45)

days following the Confirmation Date. Debtor retains the right to object to any rejection damages claims filed in accordance with this Section.

**8.2**     **Post-Petition Agreements Unaffected By Plan**.  Except as otherwise expressly provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by Debtor after the Petition Date that were otherwise valid, effective and enforceable against Debtor as of the Confirmation Date.

**ARTICLE IX**
**RELEASE OF CLAIMS**

**9.1**     **Release**.  Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, release of  Debtor of any debt of Debtor that arose before the Effective Date, and any debt of Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against Debtor of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.

**9.2**     **Injunction Relating to the Plan**.   As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against Debtor, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities released pursuant to the Plan, except to the extent expressly permitted under the Plan.

**9.3**    **Cancellation of Existing Indebtedness and Liens**.    Except as may otherwise be provided for in the Plan, on the Effective Date, all credit agreements, promissory notes, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against Debtor, shall be cancelled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor's obligations thereunder shall be deemed cancelled, and released.    To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, or release, including the cancellation, or release of any Lien securing the Claim.

**9.4**    **Setoffs**.    Except as otherwise provided herein, nothing contained in the Plan shall constitute a waiver or release by Debtor of any rights of setoff Debtor may have against any Person.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**10.1**    **Conditions Precedent to Effectiveness**.    The Plan shall not become effective and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or such conditions shall have been waived pursuant to Section 10.2 hereof:

(a)    the Confirmation Order, in form and substance reasonably acceptable to Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)    each of the Plan Documents, in form and substance reasonably acceptable to Debtor; (i) shall have been executed, delivered and, if necessary, properly recorded; (ii) shall have become effective; and (iii) shall have been filed with the Bankruptcy Court;

Distribuidora Lequar, Inc.
Plan of Reorganization                                                          Page **21**

---

(c)     all actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective; and

(d)     Debtor shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date, including without limitation, sufficient Cash to establish the Disputed Claims Reserve as to those claims to be paid by Debtor.

**10.2    Waiver of Conditions**.  Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in this Section, except that Debtor may not waive the condition that it will have sufficient Cash to meet all of Debtor's payment and funding obligations under the Plan on the Effective Date, and to establish the Disputed Claims Reserve corresponding to Debtor, as set forth in Section 6.5(a) hereof.

## ARTICLE XI
## EXCULPATION

Debtor, and its present and former members, officers, directors, representatives, shareholders, employees, financial advisors, attorneys and agents acting in such capacity shall have no liability to any Holder of any Claim or Shareholders' Interest or any other Person for any act taken or omission made after the Petition Date in connection with, or arising out of the captioned case, the Plan, the Disclosure Statement, the solicitation of votes for confirmation of the Plan, the administration of the Plan or property of Debtor's estate distributed under the Plan, or any transaction contemplated by the Plan or the Disclosure Statement in furtherance thereof, except for willful misconduct or gross negligence, as determined by a Final Order of the Court and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Nothing in the Plan shall release, discharge or exculpate any

Distribuidora Lequar, Inc.
**Plan of Reorganization**                                                    Page 22

non-Debtor party from any Claim owed to the United States Government or its agencies, including any liability arising under the Internal Revenue Code or criminal laws of the United States.

# ARTICLE XII
## RETENTION OF JURISDICTION

**12.1    Retention of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to the Bankruptcy Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:

(a)    to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

(b)    to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses pursuant to Section 2.2(c) hereof;

(c)    to hear and determine any and all pending applications for the rejection or assumption of executory contracts, unexpired leases and franchise agreements, and fix and allow any Claims resulting therefrom;

(d)    to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(e)    to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(f)    to enforce the provisions of the Plan subject to the terms thereof;

(g)      to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(h) to determine such other matters as may be provided for in the Confirmation Order.

## ARTICLE XIII
## MISCELLANEOUS

**13.1**   **Continuation of Injunctions or Stays until Effective Date**.   All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**13.2**   **Exemption from Transfer Taxes**.   In accordance with Section 1146(c) of the Bankruptcy Code,

(a)      the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan,

(b)      the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money, or other security interest under, in furtherance of, or in connection with the Plan,

(c)      the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, or other similar tax or governmental assessment.  Consistent with the

foregoing, officials of a governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

**13.3    Amendment or Modification of the Plan**.  Alterations, amendments, or modifications of the Plan may be proposed in writing by Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit thereto or in any Plan Document.

**13.4    Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtor's request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term

or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable according to its terms.

**13.5    Revocation or Withdrawal of the Plan**. Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner Debtor's rights or those of any Person in any further proceedings involving Debtor.

**13.6    Binding Effect**. The rights, duties, and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**13.7    Notices**. All notices, requests, and demands to or upon Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

**DISTRIBUIDORA LEQUAR, INC.**
P.O. Box 270126
San Juan, PR 00927

With a copy to:

Distribuidora Lequar, Inc.
Plan of Reorganization                                                    Page 26

**CHARLES A. CUPRILL PCS LAW OFFICES**
356 Fortaleza Street
Second Floor
San Juan, PR  00901
Tel.:  787-977-0515
Fax:  787-977-0518
E-mail: ccuprill@cuprill.com

**13.8**    **Governing Law**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan or the Plan Documents provide otherwise, the rights and obligations arising under this Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico.

**13.9**    **Withholding and Reporting Requirements**.  In connection with the consummation of the Plan, Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**13.10**    **Plan Documents**.  Upon filing with the Bankruptcy Court, the Plan Documents may be inspected at the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims may obtain a copy of the Plan Documents upon written request to Debtor in accordance with Section 12.7 hereof. Any Plan Documents are incorporated into and made a part of the Plan, as if fully set forth herein.

**13.11**    **Post-Confirmation Fees, Final Decree**.  Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered or as otherwise provided by the Bankruptcy Court.  A final decree shall be entered as soon as practicable after initial distributions have commenced under the Plan.

**Distribuidora Lequar, Inc.**
**Plan of Reorganization**                                                    Page 27

---

**13.12**    **Headings**.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**13.13**    **Filing of Additional Documents**.  On or before substantial consummation of the Plan, Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**13.14**    **Inconsistency**.  In the event of any inconsistency between the Plan and the Disclosure Statement, the Plan Documents or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

Dated: June 12, 2019

**DISTRIBUIDORA LEQUAR, INC.**


By:_____
**Albert Bejar Bitton**
**Vice-President**

Distribuidora Lequar, Inc.                                      Case No.
Plan of Reorganization                                                    Page 27

**13.12**  **Headings**.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**13.13**  **Filing of Additional Documents**.  On or before substantial consummation of the Plan, Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**13.14**  **Inconsistency**.  In the event of any inconsistency between the Plan and the Disclosure Statement, the Plan Documents or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

Dated: June 12, 2019

DISTRIBUIDORA LEQUAR, INC.

By:_____

Albert Bejar Bitton
Vice-President